UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK GARANT,

         Plaintiff,                                  Case Number 18-12619
v.                                              Honorable David M. Lawson

NORFOLK SOUTHERN RAILWAY CO.,

         Defendant.

_____/

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO EXCLUDE EXPERT WITNESS, AND DISMISSING COMPLAINT WITH PREJUDICE

Plaintiff Patrick Garant has multiple sclerosis (MS), a chronic, incurable (but treatable) disease that affects the central nervous system. He did not reveal that condition to Norfolk Southern Railway Company when it offered him a job as a train conductor. And when he eventually told a company doctor five years later that he had been taking medication for the disease for several years before the railroad hired him, Norfolk Southern fired him. Garant contends that his termination (and other related actions) violates the Americans with Disabilities Act (ADA). Norfolk Southern says that Garant's medical condition had nothing to do with the termination; it fired Garant because he lied about it. Because the undisputed facts confirm that Garant was fired for lying, and not due to any discrimination based on an actual or perceived disability, the Court will grant summary judgment to the railroad and dismiss the case.

I.

In fall 2011, Norfolk Southern offered Garant a position as a railroad conductor. Garant underwent a post-offer physical exam by a physician on November 17, 2011. The physician asked Garant questions and had him fill out a medical questionnaire called a Form MED-15. Garant reviewed and signed the form, certifying that his answers were "true and complete," and

authorizing the release of the information on the form to Norfolk Southern so that it could investigate and confirm the statements on the form. The form contained the ominous warning that if "any answers are untrue or misleading, or material information is omitted," he could be fired.

Garant did not disclose that he had been diagnosed with MS. The MED-15 Form asked whether he had a history of: "Head/Brain injury, disorder or illness;" "Numbness, weakness or paralysis;" or "Other injuries or illnesses." Garant checked "No" in response to each. And he listed no "current medications."

In truth, Garant was diagnosed with MS in 2001. His treatments included the prescription drug Tysabri, administered by infusions every four weeks. Garant received this treatment from April 4, 2008, through August 2012.

Multiple sclerosis — MS — is a disease in which the insulating covers of nerve cells in the brain and spinal cord — the myelin — are damaged. This damage can disrupt the ability of parts of the nervous system to transmit signals, resulting in a variety of physical symptoms ranging from benign to debilitating. *NINDS Multiple Sclerosis Information Page*, National Institute of Neurological Disorders and Stroke (19 November 2015) (http://www.ninds.nih.gov/disorders/ multiple_sclerosis/multiple_sclerosis.htm) (last visited Apr. 10. 2020). Garant testified that his MS does not limit him in any way, and it never affected his ability to do his job.

Garant testified that he did not disclose his MS diagnosis or Tysabri use because, at some point, his treating physician, Dr. Julie Burnham, advised him that he did not have to disclose MS on employment applications and that it was his "personal choice" whether to do so. Garant explained that he did not consider MS an illness or injury. He said that he did not consider Tysabri a medication because it was injected, and he equated it with Novocain shots from the dentist.

After the post-offer medical exam, Garant was medically cleared to work as a conductor and started on January 30, 2012. He joined the International Association of Sheet Metal, Air, Rail, and Transportation Workers Union, Transportation Division (SMART-TD). His job duties included assembling and uncoupling train cars, moving track switches to align track sections, and applying and releasing hand brakes on cars. Those duties generally involved working on potentially hazardous, moving equipment in various weather conditions, standing, walking up to three to six miles per shift, frequent climbing and balancing on ladders, and crossing between cars. Garant acknowledged that conductors must be able to recognize and interpret colors on railroad signs and accurately judge distances between stationary and moving cars.

Between 2012 and 2015, Garant experienced several medical symptoms, which included seeing sharper and brighter colors in one eye — requiring an eyepatch — and feeling dizzy whenever trains passed by. Garant did not report those conditions to Norfolk Southern. Per federal regulations, Norfolk Southern required Garant to update his medical certification periodically. During Garant's 2014 recertification exam, he did not disclose his MS diagnosis or symptoms to the clinician.

On May 12, 2017, as part of the medical recertification process, Garant completed a medical questionnaire, which he signed electronically. In response to the question, "[h]ave you taken any prescribed medications in the last 30 days," Garant checked "yes" and listed "Gilenya," a prescription medication. In response to another question asking about "[o]ther medical conditions, illnesses and/injuries" cropping up since he completed his last company medical form, Garant listed "MS" since "2001." He explained that he decided to disclose his MS at that point because he believed Gilenya could affect his laboratory test results.

That revelation caught the attention of Kerry Long, a Norfolk Southern medical case coordinator. He asked Dr. Francesca Litow, Norfolk Southern's chief medical officer, to review Garant's 2017 questionnaire because Garant listed MS and Gilenya on the form. After reviewing the questionnaire and Norfolk Southern's files, Dr. Litow concluded that she needed more information about Garant's reported medical condition and medication.

That same day, Dr. Litow called Garant to obtain more information. The parties disagree, however, about whether Dr. Litow informed Garant at that time that she was pulling him from service. Garant testified, and the defendant concedes, that Dr. Litow did not tell Garant she was pulling him from service. But Garant backed away from his own testimony and adopted Dr. Litow's position that she did tell him that she was pulling him from service.

During the call, Garant confirmed to Dr. Litow that he was diagnosed with MS in 2001 and underwent treatment and evaluations for the condition since that time. Dr. Litow told Garant that she needed to collect more medical information from his doctor. Although Dr. Litow could not recall, Garant said that she remarked that he "would have been better off having diabetes and lying about it than to have MS." Garant believed Dr. Litow said this because she was familiar with the medication for diabetes but nor for MS.

After the call with Dr. Litow, Long sent Garant a letter listing the medical information needed for Dr. Litow to determine Garant's fitness for his position and informing him in writing that Norfolk Southern placed him on medical hold. Dr. Litow also asked Long to place Garant on medical hold in the personnel system and to notify Garant's management team that he was on medical hold. Garant then received a text message removing him from service.

After receiving the text, Garant called his trainmaster, Courtney Siffre, reported he was on hold, and asked why Norfolk Southern pulled him from service. Siffre responded that Health

Services made the decision, and Garant needed to speak with them to change his status. During the call, Garant also disclosed to Siffre for the first time that he has MS and was taking medication for it.

Several days later, Garant received an email from Long requesting records relating to his diagnosis, evaluations, and treatment since 2014. Garant gave Norfolk some of the information on June 2, but it was incomplete.

Sometime around early June 2017, Dr. Litow sent a redacted copy of Garant's 2011 Form MED-15 and 2017 questionnaire to Assistant Division Superintendent Jeremy Hayden and Division Superintendent Mike Grace, copying labor relations personnel Adelia Strausbaugh and Spencer Bolander. Dr. Litow redacted information related to Garant's alcohol use and previous lawsuit, because it did not pertain to his health condition. She did not redact normal test results or other information that did not indicate the presence of any medical conditions. Those records were accompanied by a statement in which Dr. Litow explained that Garant failed to divulge relevant information in his post-offer physical examination and MED-Form 15. She also described her conversation with Garant about the omissions.

Based on Dr. Litow's statement, Siffre charged Garant with "conduct unbecoming an employee when [he] materially misrepresented [his]medical history on Carrier Form MED-15 in connection with [his] post-offer medical examination conducted on November 17, 2011." On June 26, Hearing Officer John Turpie held an investigative hearing to determine whether Garant engaged in the charged conduct. Based on the evidence produced at the hearing, Turpie determined that Garant materially misrepresented his medical history on the 2011 Form MED-15 by not disclosing his MS diagnosis.

Turpie discharged Garant on July 10, 2017. Turpie testified that the nature of Garant's medical condition did not matter; the issue was that he omitted it from his medical questionnaire. Mike Grace approved the discharge and concluded that Garant lied when he failed to disclose his MS diagnosis and treatment. When asked if Norfolk Southern would not have hired Garant if it knew about his diagnosis, Grace replied that he did not know.

Garant's labor union appealed his discharge under the applicable collective bargaining agreement (CBA). The Public Law Board upheld Garant's discharge in December 2018. In June 2017, the union had entered a "Nickel Plate Agreement" with Norfolk Southern, in which the railroad agreed that it would not discipline a hired employee for furnishing incorrect information on an employment application, or for withholding information, unless the railroad would not have hired the employee had it known of the true facts at the time. It does not appear that this Agreement played any role in the Public Law Board's decision.

Under the CBA, Norfolk Southern replaced Garant with J.L. Hoag, the employee next on the seniority list. It is uncontested that since 2011, Norfolk Southern discharged four employees in the Northern Region for submitting medical examination forms that included incorrect information or omitted information relating to past injuries.

Garant filed a charge against Norfolk Southern with the United States Equal Employment Opportunity Commission (EEOC) alleging discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 1201, *et seq.* After receiving his right-to-sue letter, he filed this lawsuit, alleging that Norfolk Southern discriminated against him by (1) removing him from service, (2) requesting his medical records, (3) failing to treat his medical records as confidential, (4) discharging him, (5) failing to reinstate him, and (6) holding his position open for applications after his discharge.

After discovery was completed, the railroad moved for summary judgment, arguing that when the record is read in the way most favoring Garant, there can be no dispute that disability discrimination played any role in the decisions to fire him. Instead, the sole reason for his termination was his misrepresentation of his medical history in his post-offer examination.

II.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Id.* at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). Instead, that party must

designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for" that party. *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Norfolk Southern presents several arguments for dismissing the complaint, but they can be reduced to two: Garant did not exhaust some of his claims before the EEOC, and the facts do not support any of the elements of an ADA discrimination claim. Each will be addressed in turn.

A.

The main focus of Garant's claim is that the railroad fired him because of a disability — his MS diagnosis. In addition to the termination, Garant points to other actions Norfolk Southern took which, he says, also amounted to adverse action. He mentions specifically that Norfolk Southern did not keep his medical records confidential, did not reinstate him, and held his position open while replacing him. Norfolk Southern contends that Garant cannot raise those issues because he never presented them to the EEOC.

It is well established that if an employee suffers disability discrimination, he may bring an action under the ADA for damages and other remedies, provided that he first files a timely complaint with the EEOC. 42 U.S.C. §§ 12117, 2000e-5(f)(1); *see Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). This administrative exhaustion requirement is satisfied if the plaintiff explicitly sets forth the claim in the EEOC charge, or if the claim ultimately pleaded "can be reasonably expected to grow out of" the administrative charges. *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). A claim reasonably can be expected to grow from an EEOC charge "[w]hen the EEOC investigation of one charge in fact reveals evidence of a different type of discrimination against the plaintiff" or "where facts related with respect to the

charged claim would prompt the EEOC to investigate a different, uncharged claim[.]" *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

Garant's charge of discrimination itself mentions that he was placed on medical suspension after a company physical where he disclosed his "disability," and then fired based on that disability. But on the intake questionnaire, Garant wrote that his employer found out that he had MS and then "pass[ed] around [his] Med-15 form." Considering those statements, it is difficult to credit Norfolk Southern's argument that the EEOC charge encompassed only the discharge and not the claims about maintaining medical record confidentiality, not reinstating Garant, and keeping his position open exceeded the scope of the charge. Failing to reinstate him was just the other side of the termination coin. And keeping the position open, although likely not amounting to an adverse action by itself, is just one of the elements of a *prima facie* case. The claim about medical record confidentiality — "passing around" his medical form — was framed on the intake questionnaire. These facts plainly would have prompted the EEOC to investigate all Garant's claims.

B.

Norfolk Southern believes that the record cannot support a fact issue on any of the elements of Garant's ADA discrimination claim.

Congress enacted the ADA in an effort to "eliminate[] discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The Act prohibits qualifying employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Employers cannot take adverse employment actions against a qualified employee "because of" an employee's disability. 42 U.S.C. § 12112(b)(1). The Sixth Circuit determined that the "because of" language in the ADA sets a "but for" causation standard. *Lewis v. Humboldt Acquisition Corp.*,

681 F.3d 312, 318 (6th Cir. 2012) (en banc) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).

To establish a claim of discrimination, a plaintiff must show that (1) he is disabled, or his employer regards him as having a disability, (2) he otherwise is qualified to perform the essential functions of the job, either with or without accommodation, and (3) he suffered an adverse employment action because of his disability. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). These elements may be proved by direct or circumstantial evidence. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547-48 (6th Cir. 2004). Garant relies entirely on the circumstantial manner of proof.

When evaluating a circumstantial case of discrimination under the ADA, the Court applies the three-step legal analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later clarified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004). Under the *McDonnel Douglas* structure, "the employee has the initial burden of establishing his prima facie case; if he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014).

A *prima facie* case under the ADA requires proof that (1) the plaintiff was disabled, (2) he otherwise was "qualified for the position, with or without reasonable accommodation, (3) he . . . suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Ferrari*, 826 F.3d at 891-92 (citing cases).

The parties focus their arguments on all but the third element. That element is easily demonstrated; Garant suffered an adverse employment action when he was terminated.

1.

The railroad argues that Garant was not disabled within the meaning of the ADA. Garant believes he suffers from an actual disability because "legal texts," like the National MS Society and the "[g]overnment's disability criteria," describe MS as a disability. But that is not enough. The ADA defines "disability" based not on a condition someone might have, but on what an individual can or cannot do.

An individual is disabled under the ADA if the individual has or is regarded as having "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A) & (C). A major life activity includes, among other things, "performing manual tasks, seeing, . . . walking, standing, lifting, bending, speaking, breathing, . . . concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Garant has maintained throughout this lawsuit that his MS affects his ability to do his job not at all. And Norfolk Southern seizes on that testimony to argue that there is no disability. *See Kocsis v. Multi-Care Mgt., Inc.*, 97 F.3d 876, 884 (6th Cir. 1996) (holding that "[a]lthough both arthritis and MS can be disabling in some instances, they were not so substantially limiting in this case").

The ADA's disability definition, though, does not limit relief to claimants who *actually* are limited in a major life activity. A claimant can satisfy this element if he can show that his employer "regarded [him] as" disabled. 42 U.S.C. § 12102(a)(1)(C). Garant's claim would fit that part of the statute if he "establishes that he . . . has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C. § 12102(3)(A) (emphasis added).

To succeed on this element, then, Garant "need only show that their employer believed they had a 'physical or mental impairment.'" *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019).

Garant's evidence on this element is that Dr. Litow pulled him from service and placed him on a medical hold because, in her view, he was not cleared to perform safety-sensitive duties. Garant did not provide evidence that anyone else at Norfolk Southern perceived him as disabled. But Garant insists that when Dr. Litow called him about his examinations, she told him that she was putting him on hold, which is a recommendation that an employee is not cleared to perform safety-sensitive duties. And he draws some significance from her cryptic comment that he would have been better off lying about diabetes than MS.

Although reasonable inferences must be drawn in the plaintiff's favor at this stage of the case, the undisputed facts do not justify the conclusion that anyone who had input into the decision to terminate Garant regarded him as disabled. The record plainly shows that Dr. Litow, perhaps unfamiliar with the limitations MS *could* cause, pulled Garant from service so she could investigate. And Congress has confirmed that such acts of prudence are allowable, not punishable. *See* 42 U.S.C. § 12112(d)(4)(A) (permitting medical exams and inquiries where "such examination or inquiry is shown to be job-related and consistent with business necessity"). As the court of appeals has explained, "an 'employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled.'" *Pena v. City of Flushing*, 651 F. App'x 415, 420 (6th Cir. 2016) (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). An employer has the right to investigate. Therefore, "[a] request that an employee obtain a medical exam may signal that an employee's job performance is suffering, but that cannot itself prove perception of a disability because it does not prove that

the employer perceives the employee to have an impairment that substantially limits one or more of the employee's major life activities." *Sullivan*, 197 F.3d at 811.

That prescription does not give an employer *carte blanc* to conduct an investigation into an employee's capabilities on a whim. But when there is "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job," an investigation, including a medical examination, is allowable. *Pena*, 651 F. App'x at 421(quoting *Sullivan*, 197 F.3d at 811). And that is all the evidence shows: an investigation to see whether Garant's MS impacted his ability to perform his safety-sensitive job, nothing more.

Garant's mention of Dr. Litow's remark contrasting MS with diabetes does not help him. He believed that Dr. Litow was revealing her ignorance of MS. That is all the more reason for her to investigate. And since Dr. Litow did not participate in the decision to terminate Garant, her statement amounts to nothing more than a stray remark. *Suits v. The Heil Co.*, 192 F. App'x 399, 407 (6th Cir. 2006) ("We note that stray remarks, particularly those made by a person other than a decision-maker, are not enough to show discrimination.").

Garant has not offered evidence that establishes a genuine factual dispute over whether he was disabled, actually or "regarded as."

2.

Norfolk Southern also argues that Garant was not qualified for his conductor job because he lied on his medical form. It cites *Serrano v. Cintas Corp.*, No. 04-40132, 2008 WL 4539339, *2 (E.D. Mich. Feb. 20, 2008), where the court held "that basic honesty was an objective qualification for a position with" the employer. *See also Williams v. Boorstein*, 663 F.2d 109, 117 (D.C. Cir. 1980) ("[t]rustworthiness, reliability, veracity, good judgment—these are all material qualifications for any job."). Although one would like to see that bromide applied in all positions

of employment, especially in the political sphere, it tends to be more of an aspiration than a rule of law.  And although that trait may have more importance for fiduciaries and those employed in positions of trust, its significance diminishes when the work involves mostly physical labor.

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  28 U.S.C. § 12111(8).  Garant had no problems at work.  Garant maintained that his MS never impeded him.  Not only that, but Courtney Siffre, Garant's supervisor, testified that he did not have any issues with Garant's performance.  And Siffre could not recall Garant ever requesting any special accommodations.  Garant has offered sufficient evidence to establish the second element of his *prima facie* case.

3.

Garant's termination qualifies as an adverse action, a point the parties do not dispute.  Garant also argued that Norfolk Southern discriminated against him by (1) requesting his medical records and failing to keep them confidential, (2) failing to reinstate him, and (3) holding his position open for applications after his discharge.  These arguments need not detain the Court long.

Failing to reinstate Garant is the same as firing him.  And holding his position open while other union members bid for the job was not an action that was "adverse" to Garant.  "An adverse employment action is an action by the employer that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (internal quotation marks omitted); *see also White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004), *aff'd* 548 U.S. 53 (2008).  Holding one's job position open *after* he is fired does not implicate any of those actions.

Disclosing Garant's medical records to his supervisors and human resources personnel likewise was not adverse. The ADA states that employers may conduct post-offer medical examinations but must treat any "information obtained regarding the medical condition or history of the applicant" confidential. 42 U.S.C. § 12112(d). There are three exceptions to the general rule of confidentiality: employers may disclose the information to (1) "supervisors and managers" to determine necessary restrictions on work duties, (2) first aid and safety personnel if the condition requires treatment, and (3) government officials investigating ADA compliance. *Id.* § 12112(d)(3)(B)(i)-(iii).

Garant argues Norfolk mishandled his medical information when Dr. Litow sent a redacted copy of his MED-15 Form and 2017 questionnaire to Mike Grace, Jeremy Jayden, Adelia Strausbaugh, and Spencer Bolander. This claim fails for two reasons. When Garant signed the 2011 Form MED-15, he authorized the release of the information contained on the form to Norfolk for whatever investigation was necessary to confirm the statements contained within it. That is exactly why Dr. Litow shared the records. Second, the disclosure comports with the ADA's exception for "supervisors and managers." 42 U.S.C. § 12112(d)(3)(B)(i). That section "neither expressly nor implicitly restricts the role of supervisory personnel in receiving and processing an employee's medical information." *Lee v. City of Columbus,* 636 F.3d 245, 258 (2011). That "confidentiality provision cannot be used to protect an employee from an adverse action that is not on the basis of a disability (which Plaintiff does not allege), but rather upon an employee's failure to disclose requested information during an employment entrance examination." *Dillon v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 896, 907 (E.D. Mich. 2014).

C.

Garant has not offered sufficient evidence to establish a *prima facie* case of disability discrimination. Norfolk Southern has shown that it fired him for a non-discriminatory reason. And even if Garant cleared the first hurdle (a *prima facie* case showing), he faces an uphill battle showing pretext.

Pretext is shown through evidence "that the proffered reason (1) has no basis in fact, (2) did not actually motivate [Norfolk Southern's] challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Garant offers arguments under all three options.

Garant contends that he did not falsify his medical form because his doctor told him that he did not have to disclose his MS diagnosis to a prospective employer and left the decision to his "personal choice." And he says that he did not have to reveal his monthly Tysabri infusions because he thought they were "like Novocain." Looking at the MED-15 Form's specific questions, one could give Garant some room when considering his "no" answer to whether he suffered from "Head/Brain injury, disorder or illness," since it is not entirely clear that MS is a disease of the brain. The same can be said for the "no" answer to the "Numbness, weakness or paralysis" question, since those symptoms do not manifest themselves in all cases of MS. Affording the same latitude to the denial of "[o]ther injuries or illnesses," however, challenges credibility. It is equally untenable that Garant thought that Tysabri, administered every four weeks intravenously, did not amount to a "current medication."

Nonetheless, the Court does not assess credibility when ruling on a summary judgment motion. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020) (quoting *Anderson*,

477 U.S. at 255). But the factual basis for the employer's non-discriminatory reason for its actions is not viewed from the employee's perspective. Instead, there can be no pretext under this part of the test if the employer honestly believed its reason was genuine. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (holding that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect") (citing *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998). Of course, the employer's belief must be based "on the particularized facts that were before it at the time the decision was made." *Michael v. Caterpillar Fin. Servs. Corp.*, 485 F.3d 584, 588 (6th Cir. 2007). The record here easily documents that level of inquiry. Garant had MS, and knew that he had it, well before he filled out the medical form in 2011. By all accounts, except perhaps Garant's, MS is an "illness." Yet Garant denied other illnesses when he filled out the form. Those facts were before Norfolk Southern when it decided to fire Garant for dishonesty, and they support its honest belief that its reason was correct.

Garant's main argument that his false answers were not the actual reason for his discharge relies on the Nickel Plate Agreement. That Agreement has not been made part of this record, and the only evidence of it is found in a question posed by Garant's then attorney to William Grace. According to counsel, the agreement stated that an employee who had been hired "will not be terminated or disciplined by the carrier for furnishing incorrect information in connection with an application for employment or for withholding information therefrom unless the information was of such a nature that the employee would not have been hired if the carrier had timely knowledge of it." Grace dep., ECF No. 27-34, Page.ID.1307. Garant argues that with this Agreement in place, he could not have been fired for a false answer on his medical form, unless his MS diagnosis

would have cause Norfolk Southern not to hire him in the first place. Otherwise, he says, the railroad would have violated the Nickel Plate Agreement.

It does not appear, however, that this agreement played any role in Norfolk Southern's decision to terminate Garant. Garant's union grieved that decision and there is no evidence that the agreement was even discussed in that proceeding. Nor is there any evidence that it impacted the decision of the Public Law Board. And there is evidence in this record that Norfolk Southern fired other employees for falsifying information on their medical forms, and that there were other railroad employees on the payroll who had MS. The sketchy evidence of the Nickel Plate Agreement therefore is not sufficient to create a fact question over whether the record falsification was the actual reason Norfolk Southern fired Garant.

Garant says that the proffered reason for his termination was insufficient to warrant the discharge because his supervisor could have dispensed lesser discipline. He anchors that argument on an excerpt from the testimony of William Grace, who acknowledged that a lesser form of discipline was available. But that argument ignores the rest of Grace's answer, where he explained that "the facts of the case and the charge warranted dismissal" because Garant "had lied or withheld important information from his MED-15 form." And Norfolk Southern offered uncontradicted evidence that other Norfolk Southern employees who provided incorrect, or omitted, information relating to past injuries from post-offer or periodic medical examination forms, were fired.

The evidence does not create a question of material fact on the issue of pretext.

III.

The plaintiff has not identified evidence in the record sufficient to create a material fact question on all the elements of his circumstantial case of ADA discrimination. He has not proved sufficiently a *prima facie* case, nor has he offered evidence showing pretext.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment (ECF No. 26) is **GRANTED**.

It is further **ORDERED** that the motion to exclude the testimony of Dr. Rebecca Summary (ECF No. 24) is **DISMISSED as moot**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   April 13, 2020